Travis E. GLASS, Appellant/Cross–
Respondent,

v.

STATE of Missouri, Respondent/Cross–
Appellant.

No. SC 87852.

Supreme Court of Missouri,
En Banc.

July 6, 2007.

Melinda K. Pendergraph, Office of the Public Defender, Columbia, for Appellant/Cross-Respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Stephanie M. Morrell, Asst. Atty. Gen., Jefferson City, for Respondent/Cross-Appellant.

RICHARD B. TEITELMAN, Judge.

Travis Glass was convicted of first-degree murder, section 565.020, RSMo 2000, and was sentenced to death. This Court affirmed the conviction and sentence in *State v. Glass*, 136 S.W.3d 496 (Mo. banc 2004), *cert. denied*, 543 U.S. 1058, 125 S.Ct. 869, 160 L.Ed.2d 784 (2005). Glass filed a Rule 29.15 motion for post-conviction relief alleging ineffective assistance of trial and appellate counsel. The motion court granted a hearing on all claims except whether Missouri's lethal injection procedures violated the prohibition against cruel and unusual punishment. The court denied guilt phase relief and granted penalty phase relief. Glass appeals the denial of guilt phase relief. The state appeals the grant of penalty phase relief. This Court has jurisdiction. Mo. Const. art. V, section 10; order of June 16, 1988. The judgment is affirmed.

### FACTS

The facts of this case are set forth in detail in *State v. Glass*, 136 S.W.3d 496 (Mo. banc 2004). In summary, Glass was taken in for questioning for the murder of Steffani Wilkins and he confessed to the crime. DNA material extracted from blood found on Glass' license plate, jeans

found in the backseat of Glass' car, and a hair from the trunk of Glass' car was consistent with Wilkins' DNA profile. Glass was convicted of the murder and sentenced to death.

Following his direct appeal, Glass filed a motion for post-conviction relief under Rule 29.15. The motion court granted penalty phase relief on three issues. The court found that trial counsel was ineffective for failing to: (1) object to an improper jury instruction explaining the aggravating circumstance of kidnapping; (2) investigate and present mitigating evidence; and (3) investigate and present expert testimony in mitigation. The motion court denied the claims relating to all guilt phase issues and the remaining penalty phase issues.

## ANALYSIS

To prove that counsel was ineffective, a defendant must show that counsel's performance "did not conform to the degree of skill, care, and diligence of a reasonably competent attorney" and that the defendant was thereby prejudiced. *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). This Court presumes that counsel acted professionally in making decisions and that any challenged action was a part of counsel's sound trial strategy. *State v. Tokar*, 918 S.W.2d 753, 766, 768 (Mo. banc 1996).

To demonstrate prejudice, a defendant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different. *Id.* A "defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice. . . ." *Nix v. Whiteside*, 475 U.S. 157, 175, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). Rather, the question is whether the deficiency "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

The motion court's judgment on these issues is reviewed for clear error. *Sams v. State*, 980 S.W.2d 294, 296 (Mo. banc 1998). The court's findings and conclusions will be held to be clearly erroneous only if this Court is left with the definite and firm impression that a mistake has been made. *Id.*

## I. Penalty Phase Relief

### 1. Failure to Investigate and Present Mitigation Evidence

During the penalty phase, Glass' trial counsel called ten witnesses to provide mitigation evidence. These witnesses included Glass' family members, friends, and former employers and co-workers. Glass alleges that trial counsel was ineffective for failing to investigate and present additional testimony from former teachers and other professionals. The motion court agreed, finding that trial "counsel's failure to investigate and call school officials and prior professionals was deficient and prejudicial since jurors perceive non-family members as more 'disinterested' witnesses."

To prove ineffective assistance for failure to call a witness, the defendant must show that: "(1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense." *Hutchison v. State*, 150 S.W.3d 292, 304 (Mo. banc 2004). Prevailing pro-

fessional standards for capital defense work require counsel to "discover all reasonably available mitigating evidence ..." *Wiggins v. Smith*, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). This includes "medical history, educational history, employment and training history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influences." *Id.* "Virtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances." *Payne v. Tennessee*, 501 U.S. 808, 822, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 114, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)).

### Dr. Scherr—Glass' Treating Physician

 The motion court found counsel ineffective for failing to elicit testimony from Dr. Barry Scherr, M.D. Dr. Scherr admitted Glass to the hospital for bacterial meningitis when Glass was 23 months old. The motion court found counsel's failure to interview and call Scherr "especially prejudicial" because the trial court had excluded Glass' medical records. It is not unreasonable to conclude that testimony regarding the long-term effects of meningitis would have provided mitigating evidence of Glass' impaired mental functioning. The state contends that this information was before the jury through Glass' aunt. However, as the motion court explained, Glass' aunt admitted that she was "not a doctor" and "didn't know" if meningitis had any effect on Glass.

The motion court did not clearly err in determining that counsel was ineffective for failing to elicit Dr. Scherr's testimony. The failure to call a treating physician who would have testified about Glass' impaired intellectual functioning can be prejudicial as such evidence can be inherently mitigat-

ing and critical to the jury's assessment of whether to impose the death penalty. *Hutchison v. State*, 150 S.W.3d 292, 297 (Mo. banc 2004).

### Teachers—Impaired Intellectual Functioning

 The motion court also found counsel ineffective for not eliciting testimony from Glass' former teachers, each of whom would have testified regarding Glass' impaired intellectual functioning. The motion court found that several of Glass' teachers would have explained in detail that Glass exhibited significant difficulty in learning and that he had been harassed by other students for being overweight. The court found that all of these teachers were listed on Glass' school records and that counsel did not have a reasonable, strategic reason for not eliciting the teachers' testimony. The motion court did not clearly err in granting relief on this claim.

### Probation Officers

 The motion court found that counsel was ineffective for failing to adequately investigate and present mitigating testimony from Bruce Capp and Kevin Knickerbocker, who served as Glass' probation officers on a prior stealing conviction. At penalty phase, the state introduced, as aggravating evidence, a certified copy of Glass' prior conviction for felony stealing. As the motion court recognized, counsel has a duty "to neutralize the aggravating circumstances advanced by the state." *Ervin v. State*, 80 S.W.3d 817, 827 (Mo. banc 2002), and *Wiggins v. Smith*, 539 U.S. at 524, 123 S.Ct. 2527.

Bruce Capp supervised Glass' probation from late 1998 through early 2000 and they met once a month. Glass had no probation violations. Kevin Knickerbocker supervised Glass' probation after Capp. He, too, saw Glass once a month and, then, placed

him in a program in which he supervised Glass through the mail. Glass had no probation violations until the charged offense. Both would have testified to Glass' good behavior and cooperation while on probation. Though counsel argued in closing that the murder was "simply out of character" for Glass and that the murder was committed while he was "extremely intoxicated," it was not unreasonable for the motion court to conclude that the officers' testimony would have supported this argument and reduced the prejudicial impact of Glass' prior stealing conviction. The motion court did not clearly err in granting relief on this claim.

While there are numerous opinions from this Court affirming a motion court's decision that counsel was not ineffective for declining to present the testimony of additional witnesses, many of these decisions are premised in large part upon the fact that this Court will defer to the motion court unless there is a showing of clear error. That same deferential standard of review applies where, as in this case, the motion court determines, after an evidentiary hearing, that the movant has made a valid claim of ineffective assistance. It is well-established that counsel has a duty to "discover all reasonably available mitigating evidence" in a death penalty case. *Wiggins v. Smith*, 539 U.S. at 524, 123 S.Ct. 2527. The motion court did not clearly err in finding that counsel was ineffective for failing to provide additional perspectives on Glass' background during the penalty phase of his death penalty trial.

2. *Failure to Investigate and Present Expert Testimony*

Glass also alleged in his amended motion that trial counsel was ineffective for failing to call experts during the penalty phase. The jury heard from no experts testifying on Glass' behalf during the penalty phase. Glass identified four expert witnesses who could have been, but were not called during the penalty phase: Dr. Robert Smith, a psychologist; Dr. Michael Gelbort, a neuro-psychologist; Teri Burns, a learning disability specialist; and Terry Martinez, a toxicologist. The motion court granted relief on this claim. Glass concedes that counsel investigated and consulted with Dr. Smith and provided a reasonable strategy for not calling him. Therefore, Glass only addresses three of the experts in his brief.

## Neuropsychologist

Before trial, Dr. Michael Gelbort, a neuropsychologist, evaluated Glass and administered standardized tests. That testing revealed that Glass has neuropsychological deficits that impair his ability to reason abstractly, solve problems and comprehend information. Dr. Gelbort concluded that Glass' temporal brain lobe was impaired and that, as a result, Glass had difficulties with learning, memory, and impulse control.

The motion court found that counsel's failure to call Dr. Gelbort prejudiced Glass because neuropsychological deficits have "powerful, inherent mitigating value." *Hutchison*, 150 S.W.3d at 307–08. The court found that the failure to call Dr. Gelbort was even more prejudicial because Glass' penalty phase jury heard from no experts. The motion court was in the best position to assess the probable impact of Dr. Gelbort's testimony, and it concluded that the failure to elicit the testimony was prejudicial ineffective assistance of counsel. The motion court did not clearly err in granting relief on this claim.

## Learning Disability Expert

Glass also alleged, and the motion court found, that counsel was ineffective

for failing to elicit testimony from Dr. Teresa Burns, a speech and language pathologist, who evaluated Glass after trial. Dr. Burns reviewed background materials, including medical and school records and teachers' depositions. She administered standardized tests showing that Glass' aptitude functioning is well-below age level in almost all areas, including reasoning skills, concept formation, and written language.

■ The state argues that Glass' learning deficits did not cause him to commit the murder and that, as a result, Glass' intellectual deficits are not mitigating. It is well-established that evidence of impaired intellectual functioning is valid mitigating evidence in the penalty phase of capital case, regardless of whether defendant has established a nexus between his mental capacity and crime. *Hutchison*, 150 S.W.3d at 305. Additionally, although Dr. Burns did not evaluate Glass until after trial, this fact does not necessarily preclude a finding that counsel was ineffective for failing to offer Dr. Burns' testimony. Counsel can be held ineffective even if there is no claim that counsel knew about a specific expert prior to trial. *Id.* at 307.

The motion court did not clearly err in granting relief on this claim.

### Toxicologist

■ Dr. Terry Martinez, a toxicologist and pharmacologist, evaluated Glass posttrial. Based on Glass' weight, the type of alcohol, and the time he drank, Dr. Martinez concluded that Glass' ability to appreciate the criminality of his conduct and conform to the requirements of the law was substantially impaired and he suffered from an extreme mental and emotional disturbance. Counsel spoke with Dr. Martinez regarding his fees, but counsel undertook no further investigation.

The motion court found that Dr. Martinez's testimony would have provided a basis to prove the mitigating circumstances of substantial impairment and extreme emotional distress under sections 565.032.3(2) and (6). The motion court found that this was "powerful" mitigating evidence and recognized the importance of presenting all available mitigation at trial:

> The decision to impose the death penalty, whether by a jury or a judge, is the most serious decision society makes about an individual. . . .

*State v. Debler*, 856 S.W.2d 641, 656 (Mo. banc 1993). In this case, as in any other, counsel is not necessarily ineffective for failing to call the full litany of proposed witnesses. Instead, the record in this case, read in light of the applicable standard of review, leads to the conclusion that there was evidence to support the motion court's finding that counsel was ineffective and that Glass was thereby prejudiced. We defer to that finding. The motion court's judgment granting a new penalty phase is affirmed.[1]

---

1. The motion court also granted penalty phase relief on Glass' claim of instructional error. There is no need to address this issue as the motion court's judgment is supported by its findings regarding the failure to introduce sufficient mitigation evidence. Glass also raises additional claims for penalty phase relief that were rejected by the motion court. Because this Court affirms the motion court's judgment granting a new penalty phase, the Court does not address these additional penalty phase claims. Glass also asserts that

Missouri's use of lethal injection is unconstitutional, violating the prohibition against cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. Because Glass has been granted a new penalty phase, he is no longer subject to a death sentence, and it is not certain whether he will again be sentenced to death. As a result, there is no need to address his lethal injection challenge at this point.

## II. *Remaining Claims*

Glass raised several other claims regarding alleged ineffective assistance that were rejected by the motion court. These remaining claims are discussed below.

### 1. *Admissibility of Autopsy Findings*

■ The autopsy of the victim was conducted by Dr. Dix, a medical examiner who passed away prior to trial. During the guilt phase of the trial, the state introduced Dr. Dix's curriculum vita and called Dr. Adelstein, another medical examiner, who offered testimony explaining Dr. Dix's conclusions. Trial counsel did not object. Glass argues trial counsel was ineffective for failing to object because admission of this evidence without Dr. Dix's testimony violated his rights under the Confrontation Clause as explained in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Glass also alleges that appellate counsel was ineffective for failing to raise the issue on direct appeal.

■ In *Crawford*, the Court substantially altered the Confrontation Clause analysis for hearsay evidence. *State v. March*, 216 S.W.3d 663, 665 (Mo. banc 2007). Cases before *Crawford* focused on whether the evidence at issue had adequate indicia of reliability to justify admission. The *Crawford* opinion held that the Confrontation Clause protects a defendant from the use of testimonial hearsay as substantive evidence against him, unless the non-testifying witness is unavailable, and the defendant has a prior, meaningful opportunity to cross-examine that witness. *Crawford*, 541 U.S. at 53–54, 124 S.Ct. 1354. The Confrontation Clause analysis thus centers on whether the particular evidence at issue is "testimonial" in nature. *Id.* at 51, 124 S.Ct. 1354.

■ In reviewing an ineffective assistance of counsel claim, counsel's conduct is measured by what the law is at the time of trial. Counsel will generally not be held ineffective for failing to anticipate a change in the law. *State v. Parker*, 886 S.W.2d 908, 923 (Mo. banc 1994). Glass was tried and convicted before the *Crawford* case was decided. In order to make the *Crawford* objection at trial, counsel would have had to anticipate the Supreme Court's holding in an opinion that had not yet been issued. Glass attempts to avoid this problem by arguing that the United States Supreme Court established in *Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912), that autopsy reports are subject to the Confrontation Clause.

The *Diaz* case does not support Glass' argument. In *Diaz*, the Court held only that an accused could waive his right to "meet witnesses face to face" under Section 5 of the Philippine civil government act and that, because of that waiver, the accused "cannot now complain" of the admission of evidence that included an autopsy report. 223 U.S. at 451–453, 32 S.Ct. 250. The *Diaz* case did not provide a pre-existing basis for a valid objection. Moreover, at the time of Glass' trial, Missouri law permitted one medical examiner to testify as to the results of another medical examiner's autopsy. *See State v. Mahan*, 971 S.W.2d 307, 316 (Mo. banc 1998).

The motion court did not clearly err in finding that trial counsel was not ineffective. Because the court did not clearly err in finding that trial counsel was effective, the court also did not clearly err in rejecting Glass' claim that appellate counsel should have raised the issue on appeal. The motion court did not clearly err in denying relief on this claim.

### 2. *Inconsistent Theories*

■ Glass argues that trial counsel was ineffective for pursuing inconsistent theories in the guilt and penalty phases.

During the guilt phase, counsel argued that the state had not presented evidence beyond a reasonable doubt establishing that Glass had deliberated prior to killing the victim. After Glass was found guilty of first-degree murder, counsel argued in the penalty phase that Glass was remorseful and that this one act was out of character. The motion court denied relief, finding that the strategy was not unreasonable and that Glass had not demonstrated prejudice.

■ Where counsel has investigated possible defense strategies, courts should rarely second-guess counsel's actual choices. *Middleton v. State,* 103 S.W.3d 726, 736–737 (Mo. banc 2003). After Glass was found guilty, counsel had to direct all efforts toward establishing mitigating circumstances, which included arguing that Glass had shown remorse. The motion court did not clearly err in denying Glass' claims.

3. *Failure to Object to State's Closing Argument*

Glass raises multiple claims of ineffective assistance of counsel for failing to object to various statements made by the prosecutor during closing argument.

■ To prevail on these claims, Glass must show that his counsel's objections would have been upheld if made and that the failure to object resulted in a substantial deprivation of his right to a fair trial. *State v. Clemons,* 946 S.W.2d 206, 228 (Mo. banc 1997). Counsel is not ineffective for failing to make non-meritorious objections. *Clemons,* 946 S.W.2d at 228. Further, counsel's failure to object during closing argument is generally not error, but is a function of trial strategy. *Id.* So long as the prosecutor stays within the record and its reasonable inferences, the argument is proper. *State v. Jones,* 384 S.W.2d 554, 560 (Mo.1964).

■ First, Glass argues that the motion court erred in denying his claim that counsel was ineffective for failing to object to an alleged improper attack on defense counsel. During guilt phase closing argument, defense counsel argued that the jury should carefully consider the reliability of Glass' confession because it was not audio or videotaped and notes from the meeting were not available. In response, the prosecutor argued that regardless of how a confession is memorialized, defense counsel will argue that it is insufficient. The prosecutor concluded that "I've given up trying to satisfy them. I don't have to. I've proved the defendant's guilt beyond a reasonable doubt."

■ The prosecutor is entitled to respond to the defense argument that a confession is unreliable. *See State v. Collins,* 150 S.W.3d 340, 350 (Mo.App.2004). In this case, the prosecutor did not attack defense counsel's integrity, but instead made a proper response to defense counsel's argument regarding the reliability of Glass' confession.

■ Second, Glass argues that counsel was ineffective for failing to object to the prosecutor's argument that in order to find Glass not guilty, "you must believe that everyone who came in here lied to you." Glass asserts that this argument improperly shifted the burden of proof to the defense. This argument did not shift the burden of proof. Instead, this was a proper comment on defense counsel's attempt to discredit the credibility of the witnesses. *See State v. Kreutzer,* 928 S.W.2d 854, 872 (Mo. banc 1996).

■ Third, Glass argues that counsel was ineffective for failing to object to the prosecutor's rebuttal closing argument. Glass argues that the following argument

was improper because the prosecutor was stating a personal opinion:

> Now, let's talk about this idea that Sergeant Platte lied to this man. Why not? He was lying to Sergeant Platte. If he was telling the truth to Sergeant Platte, how did that little girl's blood get on his car? Oh, I forgot, there's something wrong with how Mr. Hoey did that.

The prosecutor can argue the evidence, the reasonable inferences from that evidence, and the credibility of the witnesses. *Kreutzer*, 928 S.W.2d at 872. The motion court correctly found that this was a proper commentary on the evidence.

■■■ Finally, Glass argues that counsel was ineffective for failing to object to an alleged improper personalization by the prosecutor. One way in which improper personalization results is when the prosecutor asks the jurors to imagine that they, or some other person, is in the victim's situation or at the crime scene. *Hall v. State*, 16 S.W.3d 582, 585 (Mo. banc 2000). Here, the prosecutor asked jurors to "watch that clock" for 30 seconds, which, according to Dr. Adelstein's testimony, was the earliest time that Wilkins would have been rendered unconscious. This was not improper personalization. Instead, as counsel testified at the evidentiary hearing, the prosecutor was not asking the juror to imagine themselves in the victim's position but was only illustrating Glass' deliberation. The prosecutor was entitled to demonstrate that 30 seconds is a sufficient period of time to deliberate about killing another person. The motion court did not clearly err in denying this claim.

### 4. *Voir Dire*

Glass argues that trial counsel was ineffective during voir dire for: (1) failing to ask whether the venire panel could consider specific mitigating circumstances; (2) failing to object when the prosecutor discussed Glass' age; and, (3) failing to object when the prosecutor told the venire panel that jurors had to come to a unanimous decision regarding mitigation.

■■■ Glass asserts that counsel should have questioned the panel as to whether they would consider age, family background, alcohol addiction, drinking on the night of the murder, good character, and lack of significant criminal history as mitigating circumstances. Although trial counsel testified that it was a mistake not to question the venire panel regarding these matters, Glass made no showing at the evidentiary hearing that the jurors were unable or unwilling to consider the evidence presented. All of the jurors stated that they were willing to follow the court's legal instructions. Glass cannot establish prejudice. The motion court did not clearly err in denying relief on this claim.

■■■ Glass also argues that trial counsel was ineffective for failing to object to the prosecutor's questions regarding Glass' age at the time of the murder. During voir dire, the prosecutor asked the venire panel whether "any of you ... feel that the laws of the State of Missouri should apply with any greater or lesser weight because the defendant was a relatively young man at the time of the offense?" Glass argues that this question suggested that the jurors should not consider Glass' age when determining punishment. This question was a legitimate inquiry into whether any prospective jurors would ignore the law and instructions because of Glass' age at the time of the murder. The motion court did not clearly err in denying this claim.

■■■ Finally, Glass asserts that counsel was ineffective for failing to object to a line of questioning that allegedly suggested, incorrectly, that jurors had to be unani-

mous regarding mitigating circumstances. The prosecutor stated as follows:

> Remember, I told you aggravating circumstances must be proven beyond a reasonable doubt by the State, and you must unanimously find one or more exists. That's not so with mitigating circumstances. You as jurors either believe them or you do not. And if you believe them, you may assign whatever weight to them that you see fit. You may decide that something does not exist and therefore it, you know, doesn't deserve any consideration. You may decide that it exists but it's worthy of very little consideration or weight. Or you may decide that it exists and it deserves a good bit of consideration or weight in your evaluation of what the penalty should be.
>
> But if you find in the third step the aggravating circumstances outweigh those mitigating circumstances, you then reach phase four or step four. In step four the question is what should the penalty be? Because if you've gotten through all three of the first three steps, then you still have both choices on the table. And you may go either way. That's up to you. But whichever way you go, assuming you get there, you must be unanimous. Clear so far?

Although the prosecutor did indicate that mitigating circumstances did not need to be found unanimously, the subsequent statements indicated that all decisions had to be unanimous. However, as the motion court found, these statements occurred very early in trial process and there is no dispute that the jury was properly instructed that it did not have to find mitigating circumstances unanimously. The motion court did not clearly err in denying this claim.

#### 5. *Statutory Mitigator Instruction*

■ Glass argues that trial counsel was ineffective for failing to request a specific instruction regarding the statutory mitigator of age. As a result, Glass claims, the jury was "unable to consider ... youth as mitigation."

This claim is without merit. Counsel pursued a reasonable trial strategy in not requesting a specific instruction regarding Glass' age. The state's list of aggravating circumstances alleged that the murder was wantonly vile and involved a sexual assault and kidnapping. Counsel testified that the best course of action was to submit the general mitigating circumstances instruction that permits the jury to consider any fact as mitigation. Counsel further testified that offering a specific mitigating instruction on Glass' age would "invite the jury to compare or juxtapose that instruction with ... the list of aggravating circumstances that the State wants the jury to consider" and that this would cause the jury to "balance ... the penalty phase process in favor of the State...." Based upon this reasoning, counsel decided to rely on the general mitigating circumstance instruction so that the jury could consider any fact as mitigation and to avoid unduly focusing the jury's attention on Glass' age. Moreover, the jury was instructed that it could consider any and all evidence in mitigation and counsel argued that Glass' age was a mitigating factor. This was reasonable trial strategy. There was no prejudice. The motion court did not clearly err in denying this claim.

#### 6. *Proportionality Review*

Appellant claims that this Court's proportionality review denies due process because *de novo* review should apply on appellate review of death sentences, this Court's database does not comply with § 565.035.6 and omits numerous cases, and

this Court fails to consider all similar cases required by statute. The motion court did not clearly err in denying this claim. These claims has been repeatedly denied by this Court and appellant offers no new arguments in support. *See State v. Edwards,* 116 S.W.3d 511 (Mo. banc 2003); *Lyons v. State,* 39 S.W.3d 32, 44 (Mo. banc 2001); and *State v. Clay,* 975 S.W.2d 121, 146 (Mo. banc 1998).

### *CONCLUSION*

The motion court's judgment is affirmed.

LAURA DENVIR STITH, C.J., White and Wolff, JJ., concur; RUSSELL, J., concurs in part and dissents in part in separate opinion filed; PRICE and LIMBAUGH, JJ., concur in opinion of RUSSELL, J.

MARY R. RUSSELL, Judge,
Concurring in Part and Dissenting in Part.

I concur with the majority that the motion court properly denied Travis Glass guilt phase relief. I respectfully dissent, however, from the majority's conclusion that the motion court did not err in granting Glass penalty phase relief. I would affirm the motion court's judgment in part and reverse in part, finding that Glass is not entitled to post-conviction relief on either his conviction or sentence.

Review of the motion court's grant or denial of post-conviction relief is limited to whether the motion court's findings of fact and conclusions of law are clearly erroneous. *Anderson v. State,* 196 S.W.3d 28, 33 (Mo. banc 2006). The motion court's disposition is clearly erroneous only if, after a review of the entire record, the reviewing court is left with a definite and firm impression that a mistake has been made. *Id.*

The majority correctly outlines that Glass's claims merited post-conviction re-

lief if he showed that his counsel's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney and that he was thereby prejudiced. *State v. Hall,* 982 S.W.2d 675, 680 (Mo. banc 1998) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Unlike the majority, I would find that the motion court clearly erred in determining that Glass met this *Strickland* standard for relief for his claims of ineffective assistance of counsel relating to the penalty phase of his trial.

**Presentation of Mitigating Evidence**

The motion court found that counsel was ineffective for failing to present certain mitigating evidence. Trial counsel called 10 witnesses to present such evidence: Glass's mother, his two sisters, two of his aunts, his uncle, his cousin, his minister, his high school friend, and his friend's mother that owned the bowling alley he frequented. In addition, trial counsel investigated over 20 other lay witnesses, including family members, friends, former teachers, and former employers and co-workers.

The mitigating witnesses trial counsel called painted the following picture of Glass's life: Glass never knew his father and was essentially abandoned by his alcoholic mother. His grandparents raised him. His grandfather was an alcoholic and a strict disciplinarian. Glass had bacterial meningitis when he was 23 months old and they were told he would be lucky if he did not have brain damage because of it. He was extremely overweight throughout his life and was constantly teased at school about his size. He was a nice and friendly person that loved music and played the saxophone in the school band. He was a bit of a loner. He was an artist. He was not violent. He was religious and attend-

ed church and wanted to attend a bible college to study music after high school. When he did not get accepted into the college, he was upset and his life went downhill. He started drinking and hanging around with a different group of people. Since his arrest, his family visits him regularly in jail. His family loves him and they would continue to visit him if the jury sentenced him to life.

The motion court found that trial counsel was ineffective for not calling 26 additional witnesses:

- Dr. Barry Scherr, an emergency room doctor who treated Glass one day for bacterial meningitis;
- four teachers who could have testified Glass performed poorly in school;
- eight other teachers and school officials who could have given background information about Glass;
- two probation officers who could have testified that Glass did not have any probation violations until he murdered Stephani Wilkins;
- seven friends and acquaintances who could have given background information on Glass; and
- four expert witnesses who could have testified about Glass's mental problems and intoxication at the time of the crime.

The choice of witnesses is ordinarily a matter of trial strategy and will not support an ineffective assistance of counsel claim. *State v. Harris,* 870 S.W.2d 798, 816 (Mo. banc 1994). Counsel's strategic choices made after a thorough investigation into the relevant law and facts are " 'virtually unchallengeable.' " *Id.* at 816–17 (quoting *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Further, "the duty to investigate does not force defense lawyers to scour the globe on the off-chance some-

thing will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard,* 545 U.S. 374, 383, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that:

(1) trial counsel knew or should have known of the existence of the witness,

(2) the witness could be located through reasonable investigation,

(3) the witness would testify, and

(4) the witness's testimony would have produced a viable defense.

*Hutchison v. State,* 150 S.W.3d 292, 304 (Mo. banc 2004).

### Dr. Barry Scherr

First, the motion court found trial counsel ineffective for failing to call Dr. Barry Scherr as a mitigating witness. Dr. Scherr, an emergency room doctor, evaluated Glass one day in 1981 when he was 23 months old and determined he had bacterial meningitis. Dr. Scherr had no memory of Glass and had not seen or evaluated him since. He could have testified that a risk of bacterial meningitis was brain damage, but he had no knowledge of whether Glass had brain damage as a result of bacterial meningitis.

Glass's counsel obtained Dr. Scherr's records and tried to admit them in the penalty phase, but the prosecutor objected to them as irrelevant and immaterial, and the trial court refused to admit them. Trial counsel did not interview Dr. Scherr prior to trial.

The motion court found that it was prejudicial error not to investigate and call Dr. Scherr as a witness because he would have offered "significant mitigating evidence of impaired intellectual functioning." The

motion court relied on *Hutchison v. State,* 150 S.W.3d at 305–05. In *Hutchinson,* this Court found counsel ineffective in part because counsel failed to interview and present the Hutchinson's former psychiatrist. *Id.* Hutchinson's psychiatrist could have testified he diagnosed and treated Hutchinson for bipolar disorder and alcoholism when he was 16 years old. *Id.* In addition, Hutchinson's psychiatrist could have testified about defendant's troubled background and impaired intellectual ability. *Id.* The jury in that case also did not hear how Hutchinson was sexually abused as a child. *Id.*

Here, Dr. Scherr is not comparable to the psychiatrist in Hutchinson because Dr. Scherr had no memory of Glass and had no knowledge of whether Glass had any mental impairments. While counsel knew of Dr. Scherr and he would have testified, his testimony could not have offered a viable defense because he had no knowledge beyond what the jury already heard through other witnesses, *i.e.,* that one risk of bacterial meningitis is brain damage and that Glass had bacterial meningitis when he was 23 months old. Trial counsel was not ineffective for failing to call Dr. Scherr. The motion court clearly erred.

### *Poor School Performance*

The motion court found that trial counsel was ineffective for failing to call four of Glass's teachers who would have testified about his "impaired intellectual functioning":

(1) Kay Obermann, Glass's third grade teacher, who would have testified that Glass had very poor grades and went to a special teacher for help with reading;

(2) Clarence "Butch" Fore, Glass's sixth or seventh grade mathematics teacher, who would have testified that Glass struggled with basic mathematics skills and once, when asked why he did not do his homework, Glass tearfully told the teacher he could not divide.

(3) Martha Myers, Glass's 10th or 11th grade mathematics teacher, who would have testified that Glass performed poorly at mathematics, that he was "slow," and that though she was not qualified to say this, he could have had a processing deficit because he would pause after being asked a question and have to think before he responded.

(4) Maggie Queen, Glass's 10th or 11th grade science teacher, who would have testified that Glass had a low grade in science, that he was not motivated, and that he needed extra help but there was no special education teacher available at the time to assist him.

Counsel contacted Clarence Fore before trial, but did not call him as a witness. Counsel testified through deposition for the post-conviction relief ("PCR") hearing that he was not sure why he did not call Fore. However, counsel's choice of witnesses is a matter of trial strategy and will not support an ineffective assistance of counsel claim. *Harris,* 870 S.W.2d at 816.

As to the remaining teachers, the motion court again cited *Hutchison* for the proposition that the failure to call these teachers was ineffective assistance of counsel. In *Hutchison,* trial counsel did not obtain or review readily available records, such as school and medical records, which would have documented Hutchinson's troubled childhood, mental health problems, drug and alcohol addiction, history of sexual abuse, attention deficit hyperactivity disorder, learning disabilities, bipolar disorder, and other problems. *Hutchison,* 150 S.W.3d at 304–05.

Here, counsel diligently investigated Glass's school career. Counsel reviewed Glass's school records and tried to admit them into evidence during the penalty phase. These records would have shown

Glass's poor grades. However, the prosecution objected to them as irrelevant and immaterial and the trial court refused to admit them. Counsel also investigated and contacted, or attempted to contact, six to eight of Glass's former teachers and school officials.

Counsel is not ineffective for failing to contact every teacher and school official who encountered Glass throughout his 13 years in public school. Further, they would not have offered a viable defense because none of them had any information about serious mental impairments. Their testimony merely showed that he was a poor student who needed extra help. The motion court clearly erred in finding counsel ineffective for failing to call these teachers.

### Other Lay Witnesses

#### (a) Teachers and School Officials

The motion court found trial counsel ineffective for failing to call six additional teachers and school officials:

(1) Donna Brown—Glass's 10th grade language arts teacher,

(2) Eric Churchwell—Glass's middle and high school industrial arts teacher,

(3) Judy Caldwell—the middle school counselor at Glass's school,

(4) Elaine Longacre—Glass's 8th grade health teacher,

(5) Vince Matlick—Glass's middle school physical education teacher, and

(6) Debbie Higbee Roberts—Glass's middle and high school music teacher.

Generally, these teachers would have testified that Glass was picked on for being overweight, that he liked music and played the saxophone, that he was not violent in their presence, that he did not have the best home life, and that he was a loner and quiet. This testimony was already presented through the 10 mitigating witnesses that trial counsel called.

Further, counsel investigated two of these teachers (Brown and Roberts) and chose as a matter of trial strategy not to call them as mitigating witnesses. Counsel testified that he did not call Brown because she knew the victim's family and was reluctant to get involved. Counsel did not recall why he did not call Roberts. Counsel may not have called Roberts because she would have testified that he was surly and aggressive, and the jury may have given weight to those statements since Roberts was Glass's band and choir teacher for seven years and Glass's participation in those activities was brought up many times by the mitigating witnesses. Counsel's strategic choice not to call these teachers after investigating them is virtually unchallengeable and should not have been second-guessed by the motion court. See Harris, 870 S.W.2d at 816–17.

In finding counsel ineffective for failing to call each of these six teachers, the motion court cited Hutchison. But, as discussed previously, Hutchison is distinguishable. Here, counsel conducted a thorough investigation into Glass's school career, and cannot be found ineffective for failing to contact every teacher and school official that encountered Glass over his 13 years in school. Also, these witnesses would not have provided a viable defense as their testimony is merely cumulative to that presented by the 10 witnesses trial counsel called. See Bucklew v. State, 38 S.W.3d 395, 398 (Mo. banc 2001) (counsel not ineffective for failing to call a witness whose testimony would be cumulative to that of other witnesses). The motion court clearly erred in finding counsel ineffective for failing to call these witnesses.

#### (b) Probation Officers

The motion court found trial counsel ineffective for failing to call Glass's two

probation officers. Bruce Capp saw Glass for 10–15 minutes once a month for less than two years. Kevin Knickerbocker saw Glass for 10–15 minutes a couple of times and, then, had monthly contact with him by mail for less than a year. They could have testified that Glass had no probation violations from late 1998 until he killed Stephani Wilkins in March of 2001.

Trial counsel investigated Bruce Capp and offered several reasons why he strategically chose not to call him: Capp's testimony would have been that he did not notice Glass having family or substance abuse problems and that was inconsistent with their theory, counsel was busy working on the child pornography issue (*infra*) and did not consider Capp's testimony important enough to further investigate, and Capp was going to be out of the country at the time of the trial. Counsel's decision not to call Capp was virtually unchallengeable. *See Harris,* 870 S.W.2d at 816–17. The motion court clearly erred in second-guessing counsel's strategy for not calling Capp.

Additionally, the probation officers' testimony would not have produced a viable defense. The motion court found that this testimony would have shown that Glass was generally law-abiding. But it does the opposite because it calls attention to the fact that Glass was on probation for committing a crime when he murdered Stephani Wilkins. Besides, this murder was a major probation violation, and the lack of preceding probation violations does little in mitigation. The motion court clearly erred in finding counsel ineffective for failing to call these probation officers.

### (c) Other Friends and Acquaintances

The motion court found counsel ineffective for failing to call seven of Glass's friends and acquaintances:

1. Lesley Lehenbauer was in high school band with Glass for one year. She only saw him in class. She could have testified that he was a talented saxophone player and he would encourage her to practice the saxophone to improve.

2. Andrew Fuqua was in high school band with Glass for one year and Glass also attended Fuqua's church for a few months and gave Fuqua a ride to school sometimes. Fuqua could have testified that Glass was a nice guy and that he never saw Glass be aggressive.

3. Tim Fuqua was Andrew's father and an acquaintance of Glass's grandfather. He could have testified that he encouraged Glass to attend church and he knew Glass liked music. He saw Glass work in the garden with his grandfather. He once saw Glass belittled by his uncle.

4. Christopher Brandstatt was in the high school band with Glass. He was also on the football team with Glass and later worked with him at Wal–Mart. He could have testified that Glass loved music, and that he was an outcast in football and teased about his weight. And he could have testified that Glass went through some changes and became someone he would not consider a friend, and that Glass lost his job at Wal–Mart for stealing.

5. George Mottu was in high school band with Glass for one year. He could have testified that Glass was a good saxophone player, that he went to Glass's house four to five times, that Glass would help others, that Glass became a Christian, that Glass was picked on and got angry but

vented verbally, not physically. He could have testified that he had not seen Glass since the fall of 1998, but that he still considers Glass a friend.

6. Sarah Tuley Ladue went to school with Glass from kindergarten through graduation. She could have testified that he was friendly, liked to giggle, went to her church youth group, and that she never saw him be violent.

7. June Reidinger owns a bar that Glass frequented in Hannibal. She could have testified that she saw Glass come in about six times, that he came in at about 11:00 am and stayed for about an hour each time, that he would play darts, that he was quiet, and that she never saw him intoxicated.

Counsel investigated four of these witnesses. Counsel testified that he did not call Lesley Lehenbauer because she said she did not want to get involved with the trial as she did not want any negative reactions from the community to be taken out on her family. Counsel testified that he was not sure why he did not call Tim or Andrew Fuqua, but that all of their information was already presented through other witnesses. Counsel testified that he did not call June Reidinger because she knew the victim's grandmother and because she did not see Glass intoxicated. Counsel's decision not to call these witnesses after investigating them was a strategic choice that is virtually unchallengeable and should not have been second-guessed by the motion court. *See Harris*, 870 S.W.2d at 816–17.

Counsel asked Glass for names of potential witnesses and Glass did not give him George Mottu's name. Counsel is not ineffective for failing to call a witness counsel was unaware of when counsel took reasonable steps to uncover potential witnesses.

*Edwards v. State*, 200 S.W.3d 500, 518 (Mo. banc 2006) (counsel not ineffective for failing to call a cousin who no one had mentioned as a possible witness). Since counsel did not know about Mottu, and Glass did not mention him when asked for names of potential witnesses, counsel cannot be found ineffective for failing to call him as a witness.

Sarah Tuley Ladue was in the Navy and stationed in Guantanamo Bay, Cuba, at the time of trial. She had not seen or spoken to Glass since high school. Glass told counsel about Ladue. But counsel's knowledge of a witness is not the only thing a defendant must show. To prevail on a claim of ineffective assistance of counsel, a defendant must also show that the witness could be located through a reasonable investigation, the witness would be willing to testify, and that the witness's testimony would produce a viable defense. *Hutchison v. State*, 150 S.W.3d 292, 304 (Mo. banc 2004). As Ladue was stationed out of the country, it is not clear that she could be located or that she would be able to testify. Further, her testimony was cumulative to that given by the 10 witnesses counsel presented. *See Bucklew* 38 S.W.3d at 398 (counsel not ineffective for failing to call a witness whose testimony would be cumulative to that of other witnesses). Counsel was not ineffective for failing to call Ladue.

Counsel knew of Christopher Brandstatt, but he did not contact him. There is no evidence that counsel could not locate Brandstatt. Brandstatt's testimony could have contributed to the defense that counsel was pursuing, *i.e.*, that Glass was a nice kid who started going downhill after high school. Counsel admitted to the trial court that he would have called Brandstatt if he had known the testimony Brandstatt could offer. But counsel did not error because Brandstatt's testimony would be cumula-

tive to that already given by other witnesses. *See id.* And even if counsel did error, counsel error alone is insufficient to prevail on an ineffective assistance of counsel claim. The error must have prejudiced Glass, meaning that the error undermines the confidence in the outcome of the proceeding. *Deck v. State*, 68 S.W.3d 418, 426 (Mo. banc 2002). Counsel called 10 mitigating witnesses, many of whom offered testimony very similar to the testimony Brandstatt could have given. The jury rejected this testimony and found that Glass should be given the death penalty. Counsel's failure to call Brandstatt is not enough to undermine the confidence in this outcome.

### Expert Witnesses

The motion court granted Glass relief as to four separate and independent claims regarding expert witnesses. The motion court found counsel ineffective for failing to investigate or call in the penalty phase (1) Dr. Robert Smith; (2) Dr. Michael Gelbort; (3) a learning disability expert, such as Teri Burns; and (4) an expert in pharmacology-toxicology, such as Dr. Terry Martinez.

### (1) Dr. Smith—Psychologist

Dr. Robert Smith, a psychologist, evaluated Glass prior to the trial at counsel's request. Counsel did not call Dr. Smith as a witness during the penalty phase. He would have testified that Glass has several mental disorders (including fetishism) and that those disorders impacted his mental capacity at the time of the crime. Though counsel originally intended to call Dr. Smith as a witness, counsel chose not to when they learned that the State intended to introduce evidence that women's underwear and personal identification, as well as child pornography, had been found in Glass's home. Glass denied owning the

child pornography. The trial court excluded the items as evidence because the State did not have evidence establishing that Glass had stolen the underwear and personal identification or that it was Glass's child pornography found on the computer located in his home. But Glass admitted to Dr. Smith that he had stolen the women's underwear and personal identification and used those items for masturbatory purposes. And Dr. Smith initially diagnosed Glass with pedophilia in his report based on the child pornography found in Glass's home. Counsel did not want to risk calling Dr. Smith as a witness because that would open the door for the State to ask on cross-examination whether Dr. Smith was aware of the women's underwear and personal identification and of the child pornography and whether that affected his diagnoses. Counsel felt that such cross-examination questions would have been legitimate, and even if counsel objected to them and the objection was sustained, the question itself would have conveyed information to the jury about the child pornography and other items. Any subsequent instruction to the jury to ignore any mention of child pornography or stolen women's underwear would have been as futile as trying to unring a bell. Counsel believed that the potential damage of such cross-examination questions outweighed the potential benefit of Dr. Smith's testimony and made a strategic decision not to call Dr. Smith as a witness.

The motion court found that counsel's decision not to call Dr. Smith was unreasonable and ineffective assistance of counsel because the trial court had already excluded the child pornography evidence, so cross-examination questions on that topic would be improper.

As noted by the majority, Glass **concedes** that trial counsel provided a reasonable strategy for not calling Dr. Smith.

The motion court clearly erred in finding counsel ineffective for failing to call this expert.

### (2) Dr. Gelbort—Neuropsychologist

Dr. Michael Gelbort, a neuropsychologist, evaluated Glass prior to trial. Dr. Gelbort could have testified that, overall, Glass has a slightly above average IQ of 104. Dr. Gelbort's testing indicates that Glass has neuropsychological deficits that impair higher thinking functions such as abstract reasoning, problem-solving, and comprehension. Glass also exhibited learning and memory difficulties, which indicate his temporal lobe functions were mildly impaired.

Counsel did not call Dr. Gelbort as a mitigating witness because counsel did not want to open the door to cross-examination questions by the State as to whether Dr. Gelbort knew about the child pornography or women's underwear found in Glass's house. The motion court found that counsel's decision not to call Dr. Gelbort was unreasonable and constituted ineffective assistance of counsel. It found that Dr. Gelbort's testimony would not "open the door" to the admission of the evidence because the trial court had already determined it was inadmissible. But the inadmissibility of the items as evidence does not necessarily rule out the State asking Dr. Gelbort about them on cross-examination. "A substantial inquiry into the factual basis of an expert opinion is a proper object of cross-examination...." *State v. Thompson*, 985 S.W.2d 779, 787 (Mo. banc 1999). The State could have asked Dr. Gelbort whether he was aware of the items and whether that had any bearing on his diagnoses. Even if the jury were instructed that questions were not evidence, the question itself would have informed the jury about the items.

Trial counsel's strategic choice not to call a witness after a thorough investigation is virtually unchallengeable. *Bucklew v. State*, 38 S.W.3d at 398 (affirming motion court's denial of claim that trial counsel was ineffective for failing to call this same expert, Dr. Michael Gelbort, as a witness). Here, counsel made a reasonable choice not to call Dr. Gelbort. Dr. Gelbort's testimony about Glass's average intellect, mild impairments, and probable deficits would not have been beneficial enough to risk informing the jury about the child pornography found in Glass's house or how Glass stole women's underwear and personal identifications and used them for masturbatory purposes. The motion court clearly erred in finding counsel was ineffective for failing to call Dr. Gelbort.

### (3) Teri Burns—Learning Disability Expert

The motion court found trial counsel ineffective for failing to have Glass evaluated by a learning disability expert such as Teri Burns. Burns is a speech-language pathologist who conducts psycho-educational evaluations. Burns evaluated Glass at the request of Glass's post-conviction counsel. She determined that he has learning difficulties or disabilities and that he did not receive the necessary special services to accommodate his special educational needs.

Counsel testified that he was not aware of Teri Burns prior to trial and that he has never had an expert in learning disabilities evaluate any of his clients because it was not something that occurred to him. He did have Glass evaluated by a child development expert, Dr. Wanda Draper. Counsel decided not to call Dr. Draper. That decision was not challenged in the PCR motion.

In a death penalty case, counsel is required to "discover *all reasonably available* mitigating evidence." *Wiggins v. Smith,* 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (internal citation omitted). "Counsel is not ineffective for failing to shop for an expert that would testify in a particular way." *Edwards v. State,* 200 S.W.3d at 518.

In *Edwards,* movant argued that his trial counsel were ineffective for failing to call an expert who would have diagnosed him with Asperger's Disorder, because this diagnosis would have been mitigating evidence. *Id.* at 518–19. Edward's trial counsel had consulted with three experts and prepared an adequate social history. *Id.* This Court held that trial counsel were not ineffective for failing to consult additional experts. *Id.*

Here, counsel had Glass evaluated by three different experts, investigated over 30 lay witnesses, and reviewed medical records and school records. Counsel took the necessary steps to discover all reasonably available mitigating evidence, including any possible mental issues that could provide mitigating evidence. The trial court clearly erred in finding counsel ineffective for failing to consult with a learning disability expert.

#### (4) Terry Martinez—Toxicologist

The motion court found trial counsel ineffective for failing to call a toxicologist such as Dr. Terry Martinez to testify about how Glass's intoxication on the night of the murder may have affected Glass's ability to appreciate the criminality of his conduct. Counsel's notes indicate that he contacted Martinez prior to trial, though he does not recall it. When asked why he contacted Martinez, counsel said he suspected that he would have asked Martinez for his opinions about Glass's level of intoxication and how that would have affected him on the night of the crime. Counsel did not further investigate Martinez because counsel was planning to admit evidence about Glass's alcohol consumption through Dr. Smith, who counsel decided not to call right before trial.

Martinez evaluated Glass after trial. Glass told Martinez that on the night of the murder, he consumed approximately a fifth of tequila and 16 beers. Based on Glass's memories as to the amount he drank on the night of the murder four years earlier, as well as witness accounts of Glass drinking, Martinez could have testified that Glass would have had a blood alcohol level of approximately .30, that he would have had had a loss of inhibition, that his memory would have been impaired,[1] that he would have had a diminished thinking capacity, and that he was "under the influence of extreme mental or emotional disturbance from a pharmacological or toxicological perspective."

Here, counsel investigated and consulted an expert who could have testified about Glass's intoxication on the night of the murder: Dr. Smith. Dr. Smith was prepared to testify that due to a combination of Glass's mental disorders and intoxication at the time of the crime, Glass's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired, and that he acted under the influence of extreme mental or emotional disturbance. Counsel did not make the decision not to call Dr. Smith until right before trial, when the trial court unexpectedly granted counsel's motion to exclude evidence of the child pornography and other items found in Glass's home. As previ-

---

1. It is unclear how Glass could both accurately report the number of beers and amount of tequila he drank and have an impaired memory the night of the murder.

ously discussed, Glass conceded that counsel provided a reasonable trial strategy for not calling Dr. Smith. Counsel made a strategic decision to develop the evidence of intoxication through Dr. Smith instead of Dr. Martinez. Counsel is not ineffective for failing to investigate and call another expert who would have been cumulative to Dr. Smith.

### Claims not addressed by the Majority

Due to the disposition of this case, the majority did not address several of Glass's claims: (1) that appellate counsel was ineffective for not appealing the exclusion of mitigating evidence;[2] (2) that trial counsel was ineffective for failing to call corrections officers as mitigating witnesses to testify about Glass's good conduct in jail; (3) that counsel's ineffectiveness led to the exclusion of relevant mitigating evidence; (4) that Missouri's use of lethal injection constitutes cruel and unusual punishment; (5) that the penalty phase jury instructions are confusing; and (6) that Glass's death sentence is disproportionate. The motion court denied relief as to each of these claims. I would affirm on these claims.

The majority also did not address the State's claim that the motion court erred in finding trial counsel ineffective for failing to object to the aggravating circumstances jury instruction in the penalty phase. I would find the motion court clearly erred in granting Glass relief on this claim because the instruction was proper under the MAI–CR and any such objection would have been non-meritorious.

### Conclusion

Under the motion court's reasoning, in order to be effective, counsel upon remand would have to investigate and call as mitigating witnesses essentially every person who has ever encountered Glass throughout his life. This reasoning is impractical and illogical. Counsel here investigated over 30 potential lay witnesses and, from those, called 10 of them to testify. Counsel also obtained and reviewed school and medical records. Counsel had Glass evaluated by a psychologist, a neuropsychologist, and a child development expert, and also contacted a toxicologist. Counsel con-

2. The motion court's judgment contains contradictory reasoning. Glass claimed ineffective assistance of appellate counsel for failing to raise on appeal the trial court's exclusion of Dr. Scherr's records and other medical records and Glass's school records. The motion court's judgment states:

> Appellate counsel testified that she strategically decided not to raise the [trial court's exclusion of the medical records and school records during the penalty phase] because she made a judgment call that there was not enough in the record to demonstrate what would have been helpful or mitigating in the records. This Court finds that counsel's actions were reasonable. Moreover, Movant was not prejudiced. Movant alleges that this evidence was relevant to show that Movant had been grossly overweight, that movant had meningitis which had a risk of brain damage, and his school performance. All of this evidence was present-

ed during the penalty phase through various witnesses. These exhibits would have been merely cumulative.

Glass appealed this decision of the motion court. The majority did not address it. I would affirm this decision of the motion court. It is noteworthy that this decision is strikingly inconsistent with the motion court's decision with regard to the claim of ineffective assistance of counsel for failure to call Dr. Scherr and many of Glass's teachers. The motion court found that the information contained in the school and medical records would have been merely cumulative to evidence already presented in the penalty phase through other witnesses. But the motion court also found that trial counsel was ineffective for failing to call the doctor and the teachers who helped create those records. Their testimony, however, would have been just as cumulative to that presented by the other witnesses.

ducted a diligent and thorough investigation and, based on that investigation, made strategic choices as to which and how many witnesses would provide the best mitigation defense. The witnesses counsel called gave the jury lengthy and detailed information about Glass's background. The lay witnesses the motion court found trial counsel ineffective for failing to call would have been cumulative and would have added very little to this testimony. The motion court clearly erred in finding that Glass demonstrated that his counsel's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney and that he was thereby prejudiced.

Because the motion court clearly erred in granting penalty phase relief, I would affirm in part and reverse in part, such that Glass is denied post-conviction relief.