

# Missouri Court of Appeals
## Southern District

### In Division

KEVIN C. NEWMAN,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Movant-Appellant,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀No. SD38197
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
STATE OF MISSOURI,⠀⠀⠀⠀⠀⠀)⠀⠀⠀**Filed: October 22, 2024**
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Respondent-Respondent.⠀⠀)

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Daniel R. Wichmer

### <u>AFFIRMED</u>

In his underlying criminal case, a jury found Kevin C. Newman ("Movant") guilty of first-degree murder and he was sentenced to life in prison without parole. We affirmed Movant's conviction on direct appeal in ***State v. Newman***, 583 S.W.3d 479 (Mo. App. S.D. 2019). In this appeal, Movant presents three points that claim he received ineffective assistance of counsel ("IAC") from both his trial and appellate counsel.[1] Finding no merit in any of his points, we affirm the motion court's denial of postconviction relief.

---

[1] We have independently verified the timeliness of Movant's *pro se* and amended Rule 29.15 motions. *See **Moore v. State**,* 458 S.W.3d 822, 825-26 (Mo. banc 2015), and ***Dorris v. State***, 360 S.W.3d 260, 268 (Mo. banc 2012). Unless otherwise indicated, all rule references are to Missouri Court Rules (2023).

1

## Standard of Review

Rule 29.15(k) provides: "Appellate review of the trial court's action on the motion filed under this Rule 29.15 shall be limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Appellate courts presume the motion court's findings are correct and a "judgment is clearly erroneous when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Davis v. State*, 486 S.W.3d 898, 905 (Mo. banc 2016) (internal quotations omitted).

*Flaherty v. State*, 694 S.W.3d 413, 416 (Mo. banc 2024). We also defer "to the motion court's superior opportunity to judge the credibility of witnesses." *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019) (internal quotations omitted).

"To be entitled to postconviction relief for ineffective assistance of counsel, 'a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test.'" *Flaherty*, 694 S.W.3d at 420 (quoting *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017)). "*Strickland* requires the movant to show that his or her 'counsel's performance was deficient,' and that counsel's deficient performance 'prejudiced the defense[.]'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Both deficient performance (i.e., the performance prong) and prejudice (i.e., the prejudice prong) 'must be shown by a preponderance of the evidence ... to prove ineffective assistance of counsel.'" *Id.* (quoting *McFadden v. State*, 553 S.W.3d 289, 298 (Mo. banc 2018)).

## The Underlying Facts

"On appeal from the motion court's ruling on a Rule 29.15 motion, we view the evidence in the light most favorable to the verdict in the underlying criminal case." *Johnson v. State*, 673 S.W.3d 832, 834 n.2 (Mo. App. W.D. 2023) (quoting *Hutton v.*

*State*, 345 S.W.3d 373, 374 n.1 (Mo. App. W.D. 2011)).  As viewed in that light, the facts are as follows.[2]

Movant's victim ("Victim") was acquainted with Movant, who would supply Victim with methamphetamine to feed her addiction to illicit drugs.  In the afternoon of June 30, 2014, Victim's estranged husband ("Husband") and Victim's boyfriend ("Boyfriend") met with Victim at a public library.  Both men pleaded with Victim to end her drug use, and each asked Victim to leave the library with him.  Victim refused to go with either of them, telling Boyfriend that she needed to meet with Movant to "fix" things after she had "robbed[,]" or had someone else "rob[,]" approximately $12,000 worth of drugs and cash from Movant.

Boyfriend was familiar with Movant as a result of his own addiction to methamphetamine, and he cautioned Victim that if she went to see Movant she would end up dead.  Victim was eventually picked up at the library by one of Movant's "business" partners, K.M., who was driving Movant's car.  J.H., who had also been at the library with Victim, Husband, and Boyfriend, also got into the car with Victim to ride to Movant's residence with K.M.

Shortly after Victim and J.H. arrived at Movant's residence, they were led to the garage, where a chair was sitting on a large tarp or sheet of plastic.  Numerous knives, blades, and tools were also laid out in the garage in an intimidating manner.  Movant was angry that his money and drugs were missing, and he addressed the group of people that had gathered together in his residence, saying "if money ever came up missing again, someone was going to end up dead."  Movant strongly suspected that Victim was the

---

[2] We cite evidence unfavorable to the verdict only to provide the necessary context for Movant's claims on appeal.

3

thief as she was seen with an unknown friend at Movant's residence a day or two before the drugs and cash went missing.

Movant questioned Victim and J.H. separately from the rest of the group. J.H. denied any wrongdoing, and Victim told Movant that somebody known as "Crazy Rob" had taken Movant's cash and drugs. Movant and Victim then left together after Victim said she would help Movant "to try to find[ ] out where Crazy Rob's place was." When they eventually returned, Movant did not have his stolen drugs and cash, and he confided to K.M. that Movant felt "like [Victim] was bullsh***ing me[.]" The group remained at Movant's house for several hours.

Later that evening, or in the early hours of the following day, Movant, Victim, K.T., and A.S. left Movant's residence and went to a known party spot alongside a creek. K.T. and A.S. went to a gravel bar beside the creek, but Movant and Victim crossed over the creek and walked up a hill on the other side. After Victim left the gravel bar with Movant, no one else saw her alive.

At some point after Movant and Victim crossed the creek and were out of the sight of K.T. and A.S., A.S. heard yelling or hollering through the woods from the direction that Movant and Victim had taken after they crossed the creek. An hour or two later, K.T. and A.S. returned to the vehicle to wait for Movant and Victim to return. When Movant returned alone, he was in an unpleasant and agitated mood. When K.T. and A.S. asked Movant where Victim was, he aggressively replied, "F*** that b**ch" and "We're leaving that b**ch out here."

When it became apparent that Victim had disappeared, Victim's father began searching for her. As a part of his efforts, he called a phone number that Victim had used

4

to call him two times before she had disappeared.  Movant answered the phone and identified himself.  Victim's father did not know who Movant was, but he asked Movant if he knew anything about Victim's whereabouts.  Movant said that he "had not seen [Victim] since she had stolen from him."

A week or two after Victim's disappearance, Movant told K.T. that Movant had killed Victim and "made that b**ch look like Freddy Krueger got her."[3]  Movant then threatened K.T. that if he ever told anyone, Movant would do the same thing to K.T.'s children.  After Movant's roommate, D.M., told Movant that law enforcement had come to Movant's residence to ask questions about Victim's whereabouts, Movant told D.M. that he "[d]on't have to worry about it anymore" because he had "damn near cut her head clean[-]off."  Other testimony at trial indicated that Movant was generally defensive when someone brought up Victim and her possible whereabouts.

Nine-and-a-half months after Victim was last seen alive, her remains were located on the hill across the creek from the gravel bar.  Her body was severely decomposed, and her bones were scattered due to the effects of weather and wildlife.  Notably, Victim's wrist bones were still bound together with a yellow, nylon rope.  Investigators also found a small dent, or hole, in her skull that, according to a forensic pathologist, was most likely caused by a blow from a blunt object, but that particular wound was not significant enough to have caused Victim's death.  No witness could determine whether the dent/hole occurred before or after Victim died.

---

[3] According to WIKIPEDIA, Freddy Krueger is a fictional character who first appeared in the horror film *A Nightmare on Elm Street* (1984).  To murder his victims, Krueger "welded" blades to create "a metal-clawed, brown leather, right hand glove[,]" https://en.wikipedia.org/wiki/Freddy_Krueger (last visited Oct. 18, 2024).

**Analysis**

*Point 1 – Alleged IAC of Movant's Direct-Appeal Counsel*

Movant's first point claims:

> The motion court clearly erred in denying [Movant]'s amended
> Rule 29.15 motion as to claim 8(a) because [Movant] received ineffective
> assistance of appellate counsel to his prejudice, in violation of his rights to
> effective assistance of counsel guaranteed by U.S. Const. Am. 6 and U.S.
> Const. Am. 14, and Mo. Const., Art. I, § 18(a), in that the evidence as to
> the corpus delicti, as to the method of killing, and as to deliberation, was
> insufficient to show that [Movant] was guilty of first-degree murder and
> any reasonably competent attorney would have appealed [Movant]'s
> conviction on sufficiency grounds, and probably won.

"Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." *State v. Lammers*, 479 S.W.3d 624, 632 (Mo. banc 2016). "This Court considers all evidence in the light most favorable to the verdict and grants the State all reasonable inferences." *Id.* "Contrary evidence and inferences are disregarded." *Id.* However, "[t]he Court will not supply missing evidence or grant the State unreasonable, speculative, or forced inferences." *Id.* Finally, this "Court does not act as a 'super juror' with veto powers, but gives great deference to the trier of fact." *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011) (quoting *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998)).

"A person commits the offense of murder in the first degree if he or she knowingly causes the death of another person after deliberation upon the matter." *State v. Jackson-Bey*, 690 S.W.3d 181, 187 (Mo. banc 2024) (citing section 565.020.1).[4] Accordingly, "the elements of first-degree murder are that a person: '(1) knowingly (2)

---

[4] Unless otherwise indicated, all statutory references are to RSMo 2016.

6

caus[ed] the death of another person (3) after deliberation on the matter.'" ***Id.*** (quoting ***State v. Tisius***, 92 S.W.3d 751, 764 (Mo. banc 2002)).

We must first consider the State's contention that Movant has not properly preserved for appellate review his claim that the evidence of *corpus delicti* was insufficient because the claim set forth in section 8(a) of the amended motion argues only that sufficient evidence was not presented to prove that Movant was involved in causing Victim's death. Section 8(a) of the amended motion states:

> [Movant's appellate counsel] failed to raise on direct appeal a claim that the evidence was insufficient to support movant's condition and that the trial court erred in overruling [M]ovant's Motions for judgment of acquittal at the close of the [S]tate's evidence and all of the evidence and overruling the motion for new trial in that there was insufficient evidence to establish beyond a reasonable doubt 1)[ ][Movant] was involved in causing the death of [Victim] in any manner; 2) that he did so by stabbing her; or 3)[ ]that he did so after deliberation.

Although Movant provides a definition of *corpus delicti*[5] in the argument section of his brief, that argument does not assert that the State was required to prove the *corpus delicti* in Movant's case and failed to do so.[6]

---

[5] "The *corpus delicti* rule is a rule of evidence [that] determines whether a defendant's confession may be considered as substantive evidence of guilt." ***State v. Troyer***, 663 S.W.3d 853, 856 (Mo. App. S.D. 2023) (italics added). "The [Supreme Court of Missouri] has explained the [*corpus delicti*] rule as follows:

> Extrajudicial admissions or statements of the defendant are not admissible in the absence of independent proof of the commission of an offense, i.e. the corpus delicti. Evidence, however, that the defendant was the criminal agent is not required before the defendant's statement or confession is admitted. In addition, absolute proof independent of his statement or confession that a crime was committed is not required. All that is required is evidence of circumstances tending to prove the corpus delicti corresponding with the confession. *Slight corroborating facts* are sufficient to establish the corpus delicti. The determination of whether there is sufficient independent evidence of the corpus delicti of an offense is fact specific and requires a case-by-case evaluation.

***Id.*** at 856-57 (quoting ***State v. Madorie***, 156 S.W.3d 351, 355 (Mo. banc 2005) (internal citations omitted)).

[6] The reference to *corpus delicti* was as follows:

> "The State has the burden of establishing the corpus delicti." ***State v. Hayes***, 347 S.W.3d 676, 681 (Mo. App. E.D. 2011). "In a homicide case, the corpus delicti consists of two

7

We agree with the State that Movant's generic reference to the *corpus delicti* rule was inadequate to preserve for appeal the claim set forth in Movant's first point. The term *corpus delicti* was not mentioned at all during the evidentiary hearing on the amended motion. Movant's sole argument before the motion court was that there was insufficient evidence that Movant was involved in causing Victim's death. Thus, the record reveals that Movant's argument that the State failed to prove the *corpus delicti* was not presented to the motion court for its consideration and ruling. *See Johnson v. State*, 333 S.W.3d 459, 471 (Mo. banc 2011) ("In actions under Rule 29.15, any allegations or issues that are not raised in the Rule 29.15 motion are waived on appeal" (internal citation omitted)).

We now turn to Movant's claim that his appellate counsel was ineffective in failing to present a claim of insufficiency on direct appeal in that the evidence of "the method of killing" and whether Movant deliberated prior to the murder was insufficient to support his conviction of murder in the first degree.

At the hearing on the amended motion, appellate counsel testified that he discussed with Movant the possibility of raising a claim of insufficiency on direct appeal. Movant initially desired that a claim for insufficiency be raised, but appellate counsel advised that such a claim would not have "any chance of success on appeal" due to the

---

elements: (1) proof of the death of the victim, and (2) evidence that the criminal agency of another caused the victim's death." *Id.* "These elements may be proven by circumstantial evidence, but are not established until it has been proved that the death was not self-inflicted, due to natural causes, or an accident." *Id.* "The corpus delicti cannot be presumed and must be proved by legal evidence sufficient to show that the crime charged has been committed by someone." *Id.* (quoting *State v. Edwards*, 116 S.W.3d 511, 544 (Mo. banc 2003).[ ] *State v. Byrd*, 389 S.W. 3d 702 (Mo. App. E.D. 2012).

8

appellate standard of review, and for that reason, no sufficiency claim was ultimately raised.

In arguing to this court that the evidence was insufficient, Movant attempts to re-try the case by rearguing the credibility of the witnesses and suggesting how we should resolve conflicting testimony and the reasonable inferences we should draw from the evidence presented at trial. This we cannot do. Our standard of review prohibits us from supplanting the jury's role as the finder of fact. When we view the evidence in the light required by that standard, we conclude that sufficient evidence supported Movant's conviction.

As to "the method of killing[,[7]]" multiple witnesses testified at trial that Movant more than once admitted to, and even boasted about, killing Victim. Movant confessed to one acquaintance that he stabbed and cut Victim just like Freddy Krueger; to another, Movant claimed that he "damn near cut her head clean off." That testimony, the intimidating scene in the garage with various knives on display, and Movant's possession of knives (or access to them) was sufficient evidence from which a reasonable juror could conclude, beyond a reasonable doubt, that Movant killed Victim.

The same can be said about the sufficiency of the evidence to allow that same reasonable juror to find, beyond a reasonable doubt, that Movant deliberated before he killed Victim. First, the intimidating scene that Movant arranged in his garage for Victim on the evening of her disappearance – just hours before Movant was the last known

---

[7] Movant contends that because the verdict directing instruction, as well as the Information filed against Movant, charged that "[Movant] caused the death of [V]ictim *by stabbing* [her,]" the State's burden included not only the elements of first-degree murder but also the method of killing, specifically stabbing. "Sufficiency of evidence review, however, does not rest [up]on how the jury was instructed." ***Jackson-Bey***, 690 S.W.3d at 186 (internal citations omitted). Instead, we review whether sufficient evidence was adduced at trial to prove the elements of the crime set forth in the governing statute. ***Id***. Thus, "the method of killing" is not an element of first-degree murder.

person to see Victim alive – tends to prove that Movant deliberated before he killed Victim. After Movant concluded that Victim, not J.H., or anyone else at Movant's residence, was the person who stole his drugs and cash, Movant took Victim to a remote location along a creek and then walked her up the hill to the site of the murder, where her wrist bones were eventually found still bound together by a yellow, nylon rope. Taken together, this evidence sufficiently proved that the killing was willful, deliberate, and premeditated as opposed to an act of sudden passion.[8]

Movant also had a strong motivation to kill Victim based upon his belief that she had stolen approximately $12,000 of drugs and cash from him. Movant had completed his own investigation into who was responsible for the missing drugs and cash, and we agree with the State's argument that it supported a reasonable inference that "[Movant] had found out who had stole[n] his money, and he knew what he was going to do." In addition, when Victim was at the library, she told Boyfriend that she needed to leave to meet someone because she either "robbed" or had someone "rob" Movant and she needed to fix the situation.

"Circumstantial rather than direct evidence of a fact is sufficient to support a verdict." *State v. Lehman*, 617 S.W.3d 843, 847 (Mo. banc 2021). "If that evidence supports equally valid inferences, it is up to the factfinder to determine which inference to believe, as '[t]he [factfinder] is permitted to draw such reasonable inferences from the

_____

[8] As an example of Movant's attempt to re-try the case before this court, he proffers a version of events that would only support a second-degree murder conviction instead of first-degree murder, claiming that

> [e]ven supposing that the killing happened when [Movant] was alone with [Victim], the evidence we have of the two being together points not to cool deliberation, but to a "hot" killing. [Victim] and [Movant] were heard "arguing" and "hollering." This points to a killing being made in the middle of a fight, even in the heat of passion (with or without adequate provocation) and *not* one made after deliberation. [(Internal citations omitted)].

evidence as the evidence will permit.'" *Id.* (quoting *State v. Hineman*, 14 S.W.3d 924, 927 (Mo. banc 1999)).

Such is the case here, where the evidence presented at trial, and the reasonable inferences to be drawn therefrom, was sufficient for a reasonable juror to find, beyond a reasonable doubt, that Movant had killed Victim after deliberating upon the matter. Movant identifies equally valid inferences that the jury *could* have drawn from the evidence, but he has not demonstrated that the inferences supporting the verdict were "speculative or forced inferences." *See Langdon*, 110 S.W.3d at 811-12. Because a claim of insufficiency would not have been meritorious, appellate counsel did not provide IAC by choosing not to raise a non-meritorious claim.

Point 1 is denied.

*Point 2 – Alleging Trial-Counsel IAC*
*in Failing to Object to Photographs of Knives*

Point 2 claims:

> The motion court clearly erred in denying [Movant]'s Missouri amended Rule 29.15 motion as to claim 8(b) because [Movant] received [IAC from] trial counsel to his prejudice, in violation of his rights to effective assistance of counsel guaranteed by U.S. Const. Am. 6 and U.S. Const. Am. 14, and Mo. Const., Art. I, § 18(a), in that the evidence presented at trial regarding knives and other items collected by [Movant] and his fiancée were irrelevant and inflammatory and any competent attorney would have objected and the objection would have been sustained.

We disagree. In order to prevail on this claim, Movant "must show that his counsel's objection[ ] would have been upheld if made and that the failure to object resulted in a substantial deprivation of his right to a fair trial." *Glass v. State*, 227 S.W.3d 463, 473 (Mo. banc 2007). "Counsel is not ineffective for failing to make non-meritorious objections." *Id.* "Ineffective assistance of counsel is rarely found in cases of

11

a failure to object." ***Brown v. State***, 450 S.W.3d 847, 854 (Mo. App. S.D. 2014) (quoting ***Gurley v. State***, 431 S.W.3d 511, 516 (Mo. App. E.D. 2014)).

Here, even if trial counsel had lodged an objection when the State offered into evidence the photographs at issue, that objection would have been overruled because the photographs' probative value to support the testimony that Movant had laid-out a display of knives to intimidate Victim and J.H. was not outweighed by the risk of unfair prejudice. *See **State v. Aaron***, 665 S.W.3d 401, 405 (Mo. App. E.D. 2023) ("If a photograph is shocking or gruesome, it is generally because the crime itself was shocking or gruesome"). Movant orchestrated the garage intimidation scene, was present when a collection of knives and other intimidating objects were displayed to Victim and J.H., and witnesses testified that Movant was in control of the interrogation when those objects were displayed. The photographs supported that testimony, and the display was probative of whether Movant deliberated on killing Victim. Accordingly, the motion court did not clearly err in denying Movant's claim of IAC by trial counsel because such an objection would not have been meritorious. *See **Jones v. State***, 631 S.W.3d 682, 691 (Mo. App. S.D. 2021) ("Trial counsel is not ineffective for failing to make a non-meritorious objection").

Point 2 is denied.

*Point 3 – Alleging Trial-Counsel IAC*
*in Failing to Object to a Closing Argument*

Movant's third point claims:

> The motion court clearly erred in denying [Movant]'s amended
> Rule 29.15 motion as to claim 8(c) because [Movant] received [IAC by]
> trial counsel to his prejudice, in violation of his rights to effective
> assistance of counsel guaranteed by U.S. Const. Am. 6 and U.S. Const.
> Am. 14, and Mo. Const., Art. I, § 18(a), in that the prosecution made

12

> strained and unsupported inferences from the facts adduced at trial to argue that [Movant] caused the dent in [Victim]'s skull, and any competent attorney would have objected and the objection would have been sustained.

We disagree, concluding that the State's argument was a reasonable inference to be drawn from the evidence submitted throughout the course of the trial.

"[C]ounsel's failure to object during closing argument is generally not error, but is a function of trial strategy." **Glass**, 227 S.W.3d at 473. "So long as the prosecutor stays within the record and its reasonable inferences, the argument is proper." **Id.** "Moreover, because the jury is instructed that the lawyers' arguments are not evidence, prejudice is unlikely to result from the failure to object to statements made in closing argument." **Barton v. State**, 432 S.W.3d 741, 754 (Mo. banc 2014).

Here, the specific statements made during the State's closing argument were that Movant struck Victim in the head, causing the dent/hole in Victim's skull. Movant contends his trial counsel should have objected to these statements because the forensic pathologist was unable to conclude that the dent/hole was caused before Victim's death and, similarly, there was no direct evidence that the dent/hole was caused by Movant. The prosecutor's statements were made during the State's general theory of the case -- that Movant walked Victim up the hill over the creek, Movant struck Victim in the head causing the dent/hole, bound her wrists with the yellow, nylon rope, then stabbed and sliced her until he nearly cut Victim's head off.

An objection to those arguments would not have been meritorious because the prosecutor is free to argue any reasonable inference permitted by the evidence. In fact, trial counsel argued in her closing argument the opposite, equally-valid inference that the dent or hole was caused *after* Victim's death.

13

The other thing we know, the State has focused on this hole in her skull. What did [the forensic pathologist] tell you? He didn't even call it an injury. He called it an abnormality. Their own expert didn't even say it was an injury. Their own expert says, he can't say within a reasonable degree of medical certainty what caused that hole. He also said he can't say within a reasonable degree of certainty how she died, let alone when she died and who caused her death.

That inference offered by trial counsel was also a reasonable one under the evidence adduced at trial. Thus, it was for the jury – not this court acting as a super juror – to resolve conflicting, reasonable inferences that could be drawn from the evidence. Trial counsel testified during the evidentiary hearing on the amended motion that she "didn't find it objectionable because of the deformity in the head. I think the State is free to argue any reasonable inference from the evidence[.]"

Moreover, even if an objection to the State's closing argument would have been meritorious, we could not say that a substantial deprivation of Movant's right to a fair trial had occurred as the jury could have accepted defense counsel's inference and entirely ignored the dent/hole in Victim's skull, yet still rendered a guilty verdict based upon the other substantial evidence presented at trial that sufficiently proved Movant guilty beyond a reasonable doubt.

For these reasons, the motion court did not clearly err when it found that defense counsel was not ineffective in electing not to lodge a non-meritorious objection to the State's reasonable argument regarding the dent/hole in Victim's skull. Point 3 is also denied, and the motion court's denial of postconviction relief is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS

14